**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| AutoBrilliance, LLC, | |
| Plaintiff, | **Civil Action No.: 4:21-cv-654** |
| v. | |
| General Motors Company and General Motors LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff AutoBrilliance, LLC ("AutoBrilliance" or "Plaintiff"), for its Complaint against Defendant General Motors Company ("GMC") and Defendant General Motors LLC ("GMLLC"), (collectively "General Motors", "GM" and/or "Defendants") alleges the following:

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., involving infringement of the patents in suit identified by United States Patent No. 6,615,137 ("the '137 patent", Exhibit A) and United States Patent No. 7,337,650 ("the '650 patent", Exhibit B) (collectively, "the patents in suit" or "the asserted patents").

## THE PARTIES

2.      Plaintiff AutoBrilliance is a limited liability company organized under the laws of the State of Texas.

3.      AutoBrilliance is the current assignee of both the '137 patent and the '650 patent.

4.      On information and belief, Defendant General Motors Company ("GMC") is a company organized and existing under the laws of the State of Delaware with a principal place of business located at 300 Renaissance Center, Detroit, Michigan 48265.

5.      On information and belief, Defendant General Motors LLC ("GMLLC"), a direct subsidiary of GMC, is a company organized and existing under the laws of the State of Delaware with a principal place of business located at 300 Renaissance Center, Detroit, Michigan 48265.

6.      On information and belief, Defendants GMC and GMLLC act in concert by, among other things, making, using, importing, selling, offering for sale and/or providing and/or causing to be used in the United States the Accused Instrumentalities, including an inter-vehicle communication system, based for example, on GM's Vehicle to Vehicle (V2V) technology, one aspect of the "Accused Instrumentalities" (see https://www.acarplace.com/brands/gm/vehicle-to-vehicle.html, last accessed and downloaded August 19, 2021),  GM's Cadillac "Super Cruise" cruise control technology, another aspect of the "Accused Instrumentalities" (see https://www.cadillac.com/ownership/vehicle-technology/super-cruise, last accessed and downloaded August 19, 2021), and GM's Autonomous Vehicle technology, yet another aspect of the "Accused Instrumentalities" (see https://www.motortrend.com/news/meet-cruise-av-gms-first-production-ready-driverless-car, last accessed and downloaded August 19, 2021).

7.      An exemplary claim chart detailing the correspondence of every element of claims 1-7, 13-21, 25 & 27 of the '137 patent with features of GM's Accused Instrumentalities relating to GM's Vehicle to Vehicle (V2V) technology is attached hereto as Exhibit A-1 and incorporated herein by reference.  A second exemplary claim chart detailing the correspondence of every element of claim 31 of the '650 patent with features of GM's Accused Instrumentalities

relating to GM's Cadillac "Super Cruise" cruise control technology and GM's Autonomous Vehicle technology is attached hereto as Exhibit B-1 and incorporated herein by reference.

## JURISDICTION AND VENUE

8.      This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

9.      This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) on the grounds that this action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285.

10.     This Court has personal jurisdiction over Defendants GMC and GMLLC because Defendants have minimum contacts with the State of Texas and have purposefully availed themselves of the privileges of conducting business in the State of Texas.  For example, on information and belief, Defendants GMC and GMLLC have sold or offered to sell the Accused Instrumentalities in the State of Texas and in this District or have manufactured (or had manufactured) vehicles including the Accused Instrumentalities and provided them to intermediaries for distribution throughout the country, including Texas and this District, with knowledge of this distribution.

11.     Venue is proper within this District under 28 U.S.C. § 1400(b) on the grounds that Defendants have committed acts of infringement in and have regular and established places of business in this District.  For example, upon information and belief, (a) Defendants conduct their business of the exclusive distribution of new GM automobiles to the consuming public in this District through authorized GM dealerships (also referenced interchangeably as GM dealers) in this District, which Defendants hold out to the public as their own; and (b) Defendants GMC and GMLLC conduct their business of the provision of new purchase warranties and vehicle service

pursuant to those warranties to the consuming public in this District through their authorized GM dealerships located in this District.

12.     Upon information and belief, each of the authorized GM dealerships in this District are regular, continuous, and established physical places of business of Defendants GMC and GMLLC, being established, ratified, and/or controlled by General Motors as authorized dealers, which are the exclusive places of business at which General Motors offers for sale, sells, and provides authorized maintenance, warranty, and recall services for the General Motors automotive vehicles and components that infringe the patents in suit.

13.     Defendants are subject to this Court's specific and general personal jurisdiction pursuant to due process or the Texas Long Arm Statute, because Defendants conduct substantial business in this forum, including: (i) making, using, selling, offering for sale, and/or importing vehicles with technology and/or features that have been alleged to infringe the patents in suit in this Complaint; and (ii) regularly conducting or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to citizens and residents in Texas and in this District.

14.     Upon information and belief, Defendants GMC and GMLLC are the exclusive manufacturers, importers and distributors of Buick, Cadillac, Chevrolet and GMC branded vehicles.  Upon information and belief, GMC and GMLLC manufacture and assemble, both in the United States and internationally, Buick, Cadillac, Chevrolet and GMC branded vehicles, and distribute them through GM dealerships throughout the United States and in this District.  GM also maintains an automobile factory in a neighboring judicial district, in Arlington, Texas (Tarrant County) known as the "General Motors Arlington Plant" (*see*

https://gmauthority.com/blog/gm/gm-facilities/gm-usa-facilities/gm-arlington-plant/, last accessed and downloaded on August 19, 2021).

15.     Upon information and belief, Defendants are registered to do business in Texas with the Secretary of State.  The Texas Business Organizations Code (Bus. Org. § 9.001) requires all entities formed outside of the State of Texas to complete such registration in order to transact business in Texas.  Upon information and belief, GMC and GMLLC are both registered as taxable entities with the Texas Comptroller of Public Accounts in connection with their marketing and distribution activities, and their sales of Buick, Cadillac, Chevrolet and GMC branded vehicles through their relationships with authorized GM dealerships.

16.     Upon information and belief, Defendants GMC and GMLLC engage in sales and service of products that infringe the patents in suit at numerous vehicle dealerships in the Eastern District of Texas, including, for example, Gabriel/Jordan Buick GMC located in Kilgore, Texas (*see* https://www.gabrieljordanbpg.com/, last accessed and downloaded on August 19, 2021), Maverick Chevrolet located in Marshall, Texas (*see* https://www.maverickchevrolet.net/, last accessed and downloaded on August 19, 2021), ORR Cadillac GMC located in Longview, Texas (*see* https://www.cadillaclongview.com/, last accessed and downloaded on August 19, 2021), and Yates Buick GMC located in Henderson, Texas (*see* https://www.yatesbuick.com/, last accessed and downloaded on August 19, 2021).

17.     Upon information and belief, Defendants GMC and GMLLC manage the marketing, sales and service of Buick, Cadillac, Chevrolet and GMC branded vehicles to customers and/or potential customers located in Texas and in the judicial Eastern District of Texas.  Upon information and belief, each GM dealership permitted to sell and service new GM vehicles in this District must be authorized by GM.

18.     Upon information and belief, GM has numerous employees in the State of Texas, including at GM's automobile factory in Arlington, Texas.

19.     Upon information and belief, GMC and GMLLC employees work with GM dealerships in this District on issues related to sales, marketing, technical training, and the service of parts and accessories.  Upon information and belief, GMC and GMLLC reimburse these employees for travel and personal expenses related to their job responsibilities.

20.     Upon information and belief, GM dealerships located within this District have executed dealer sales and service agreements ("GM dealership agreements") with GM (*see e.g.* https://www.sec.gov/Archives/edgar/data/1019849/000095012400006964/k57699ex10-2_7.txt/ last accessed and downloaded on August 19, 2021.  Upon information and belief, these GM dealership agreements set forth standards and requirements enumerated by GM that GM dealerships are required to comply with.  Upon information and belief, these standards and requirements are directed to at least the GM dealerships' facility, space, appearance, layout, and equipment.

21.     Upon information and belief, Defendants GMC and GMLLC regularly, continuously, and systematically provide support to and control over the GM dealerships located in the Eastern District of Texas.  Upon information and belief, GM employees regularly and systematically work at GM dealerships in this District to educate GM dealership employees regarding features of the accused products sold in this District.  Upon information and belief, various positions at GM require working at the GM dealerships in this District.

22.     Upon information and belief, GMC and GMLLC employees regularly travel to the GM dealerships in this District in order to provide support and exercise control over the sales, marketing, and service of Buick, Cadillac, Chevrolet and GMC branded automobiles in

this District.  As examples of GM's support and control over the GM dealerships, upon information and belief, GM employees travel to the GM dealers located in this District to ensure compliance with GM dealership standards, to ensure that advertising is consistent with GM corporate message and branding guidelines, to train GM dealership personnel on new products, to assist GM dealerships with problem solving, to diagnose technical concerns, to provide on-site assistance, to assist GM dealerships with sales, marketing, business development and business plan, to ensure GM dealership orders meet market demand, to manage monthly vehicle allocation, and to review and analyze GM dealership financial statements and to consult with GM dealerships to improve their operations and retail business.

23.     Upon information and belief, while GMC and GMLLC employees are working at GM authorized dealerships in this District, they have access to communication devices (cell phones, laptops, etc.) provided by GM on which they conduct business on behalf of GM.  Upon information and belief, GM employees have access to their GM e-mail accounts while they are present in GM dealerships in this District.

24.     Upon information and belief, through its exclusive agents, instrumentalities and representatives, GMC and GMLLC provide new car warranty services within this District on vehicles including the Accused Instrumentalities.  Upon information and belief, GMC and GMLLC warrant to the original and each subsequent owner of new Buick, Cadillac, Chevrolet and GMC branded vehicles that any GM authorized dealership will make any repairs or replacements necessary to correct defects in material or workmanship arising during the warranty period.  Upon information and belief, such warranty work is paid for by GM.  Upon information and belief, there are numerous authorized GM dealerships performing warranty work in the Eastern District of Texas, at the service departments at, for example, Gabriel/Jordan Buick

GMC, Maverick Chevrolet, ORR Cadillac GMC, and Yates Buick GMC all noted above.  Upon information and belief, service technicians employed at these GM dealerships participate in GM sponsored training programs and events.

25.     Upon information and belief, the GM dealerships located within this District are GM's exclusive agents, instrumentalities, and representatives within this Judicial District for the provision within this District of all new warranty service for Buick, Cadillac, Chevrolet and GMC branded GM vehicles sold both within the District and outside the District (*see, e.g.,* https://www.gmc.com/owners/warranty-details, last accessed and downloaded on August 19, 2021).  Upon information and belief, if a GM customer located within the District needs to have new car warranty repairs performed within the District on a GM vehicle they purchased, GM requires the customer to have the work performed at one of their authorized GM dealerships within the District.

26.     Upon information and belief, GMC and GMLLC control the provisioning of warranty service and work at the GM dealerships in this District.  Upon information and belief, GM requires the authorized GM dealerships to perform warranty work.  Upon information and belief, technicians employed by GMC and GMLLC provide direct supervision and assistance within this District on a regular, ongoing, and continuous basis in connection with warranty repairs being performed at GM dealerships within the District.

27.     Upon information and belief, GMC and GMLLC regularly engage in marketing activities that promote the sale of Buick, Cadillac, Chevrolet and GMC branded products to customers and/or potential customers located in Texas and in the judicial Eastern District of Texas.  Upon information and belief, GMC and GMLLC maintain interactive commercial websites, accessible to residents of Texas and the Eastern District of Texas, through which GMC

and GMLLC promote their products that include the Accused Instrumentalities.  (*see, e.g.* https://www.gmc.com/index/shopping-tools/dealer-locator.html#?services=238, last accessed and downloaded on August 19, 2021.)  Upon information and belief, these interactive commercial websites direct customers as to where to buy Buick, Cadillac, Chevrolet and/or GMC-branded vehicles with Accused Instrumentalities, including directing them to the GM dealerships within the Eastern District of Texas.

28.     GM's interactive commercial websites allow a customer to see available inventory and GM dealership locations in this District through its "Search Inventory" and "Locate a Dealer" functions (*see, e.g.* https://www.gmc.com/index/shopping-tools/dealer-locator.html#?services=238, last accessed and downloaded on August 19, 2021.)  These interactive commercial websites direct customers as to where to service their Buick, Cadillac, Chevrolet and GMC branded vehicles based on the desired location and needed service at the GM dealerships within the Eastern District of Texas.  GM's interactive websites also provide service and care information, and materials about GM's products, including the Accused Instrumentalities.  Upon information and belief, GM attempts to sell their branded vehicles within this District, which vehicles include the Accused Instrumentalities, by causing advertisements for their vehicles to appear on television and radio programs broadcast into the District and in local newspapers distributed within the District.

29.     Upon information and belief, Defendants' commercial interactive websites solicit orders from customers, including customers in this District.  Upon information and belief, GM's websites allow a customer to "build your own" Buick, Cadillac, Chevrolet and GMC branded vehicle.  (*see, e.g.,* https://www.buick.com/build-and-price, last accessed and downloaded on August 19, 2021.)  Upon information and belief, once a customer builds a vehicle on one of

Defendants' websites, the website presents the customer with the option to request a quote. Upon information and belief, once a customer provides contact information to request a quote and selects one or multiple GM dealerships based on select criteria, such as a zip code. Defendants then have the authorized GM dealerships contact the customer to execute the sale of the vehicle (*see, e.g.* https://www.gmc.com/current-offers#, last accessed and downloaded on August 19, 2021).

30.     Upon information and belief, GMC and GMLLC own or control "Buick," "Cadillac," "Chevrolet" and "GMC" trademarks, and all trademarks related to the Buick, Cadillac, Chevrolet and GMC brands, in the United States.  Upon information and belief, the building exteriors of the Dealers in this District are branded with GM's trademarked logos, and the GM dealership names include GM's trademarks: "Buick," "Cadillac," "Chevrolet" and "GMC."

## THE TECHNOLOGY AND THE PATENTS IN SUIT

## THE '137 PATENT

31.     On June 26, 2001, Robert Pierce Lutter and Dan Alan Preston filed United States Patent Application No. 09/892,333 ("the '333 Application").  The '333 Application was duly examined and issued as the '137 patent, entitled "Method and Apparatus for Transferring Information Between Vehicles," on September 2, 2003.

32.     The '137 patent recently expired, on or about June 26, 2021.

33.     AutoBrilliance is the owner of the '137 patent and has the full and exclusive right to bring actions and recover past and present damages for the Defendants' infringement of the '137 patent.

34.     The '137 patent is valid and enforceable.  A true and correct copy of the '137 patent is attached hereto as Exhibit A.

35.     The '137 patent includes 29 claims. ('137 patent, Ex. A at 8:61–12:26.)

36.     The '137 patent describes systems and methods that receive sensor data from other vehicles at a processor of a local vehicle.  As the '137 patent describes, the processor displays the sensor data at the local vehicle along with sensor data gathered from a local sensor at the local vehicle.  The "processor provid[es] kinematic state data for both a local vehicle and for objects detected in the sensor data for transmission to other vehicles." ('137 patent, Ex. A at 9:1–9:5.)

37.     In order to alleviate vehicle collision or hazard risks caused when a driver cannot see or is unaware of a condition such as an oncoming object, the '137 patent describes systems and methods having or providing an improved vehicle operation environment by displaying the sensor data at the local vehicle and transmitting the kinematic state data to the other vehicles. For example, the '137 patent describes that a processor, based on detecting (identifying) an object in the sensor data, determines a kinematic state for the object.  For instance, "kinematic states for … detected objects are compared with the kinematic state of the [local] vehicle.

38.     If it is likely that a collision will occur between the detected objects and the local vehicle, a warning is automatically generated [at the local vehicle] to notify the [local] vehicle operator of the impending collision.  The sensor data and kinematic state of the [local] vehicle can be transmitted to other vehicles so that the other vehicles are also notified of possible collision conditions."  (*See* '137 patent, Ex. A at 1:36–46; *see also* claim 1.)  Figure 1 of the '137 patent, reproduced below, illustrates the improved structure and computing environment for

collision or hazard avoidance disclosed by the '137 patent.



39.    Among the specific technological improvements to devices and methods for collision or hazard avoidance, the '137 patent describes systems and methods that determine, display, and/or share vehicle kinematic state data 17 and object kinematic state data 19 at or among one or more of vehicles 14A, 14B, and 14C. *Id.*

40.    The claimed elements and claimed combinations of the '137 patent were not well-understood, routine, and conventional to a skilled artisan in the relevant field.

### THE '650 PATENT

41.    On November 9, 2004, Dan Alan Preston and David N. Olmstead filed United States Patent Application No. 10/985,577 ("the '577 Application").  The '577 Application was duly examined and issued as the '650 patent, entitled "System and Method for Aligning Sensors On a Vehicle," on March 4, 2008.

42.    AutoBrilliance is the owner of the '650 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for the Defendants' infringement of the '650 patent.

43.     The '650 patent is valid and enforceable.  A true and correct copy of the '650 patent is attached hereto as Exhibit B.

44.     The '650 patent includes 58 claims. ('650 patent, Ex. B at 7:56–12:23.)

45.     The '650 patent describes systems that receive sensor data from different types of sensors at a processor of a local vehicle.  As the '650 patent describes, the processor utilizes the sensor data to align and establish a vehicle reference frame and utilizes the established reference frame and sensor data updates to maintain system alignment in the local vehicle. ('650 patent, Ex. B at 3:57–4:9.)

46.     Among the specific technological improvements to systems utilizing sensors for operating a vehicle, the '650 patent describes systems that can be used to align sensors to each other and to the vehicle without requiring external alignment equipment ('650 patent, Ex. B at 3:12–14); can rely on sensor data from the vehicle as part of the alignment process ('650 patent, Ex. B at 3:24-25); and does not require relying on pre-alignment of any sensor to achieve a vehicle reference frame ('650 patent, Ex. B at 3:32-33).

47.     The claimed elements and claimed combinations of the '650 patent were not well-understood, routine, and conventional to a skilled artisan in the relevant field.

## AUTOBRILLIANCE'S CLAIMS ARE PATENT ELIGIBLE

48.     The claims in both of the asserted patents are directed to patent eligible subject matter.

49.     The asserted patents are directed to providing unconventional computing solutions that address problems that are particular to computerized vehicular sensor and communications systems.

50.    The systems, devices and methods of the asserted '137 patent provide for generating sensor data and tracking, evaluating and communicating kinematic states of objects in proximity with a vehicle.  (*See, e.g.,* '137 patent at 1:37-46.)  The systems, methods and devices of the asserted '137 patent are also directed to conveying warning information relating to the sensor data and kinematic states of objects in proximity to a vehicle to one or more users, even for objects beyond the line of sight of a driver.  (*Id.* at 3:13-28.)  Similarly, the '650 patent describes systems that can be used to align sensors to each other and to the vehicle without requiring external alignment equipment (*See, e.g.,* '650 patent at 3:12–14) and that do not require reliance on pre-alignment of any sensor to achieve a vehicle reference frame (*Id.* at 3:32-33).

51.     Providing computerized tracking and sensor systems with systems, devices and methods in the manner claimed in both of the patents in suit solved challenges over the techniques and systems known in the art at the time.  Thus, the claims of the asserted patents are directed to and/or contain inventive concepts, being both novel and unconventional, which are sufficient to render the asserted patent claims in both patents to be patent eligible.

52.    In particular, prior to the priority date of the asserted '137 patent, in systems, such as traditional vehicular sensing systems, information about the kinematic states of objects in proximity to a vehicle might need to be gathered and evaluated directly by only a driver of the vehicle.  ('137 patent at 1:07-33.)

53.    The '137 patent overcame these disadvantages by, for example, describing and enabling systems, devices and methods for delivering kinematic state information about objects around a vehicle detected with sensors as well as detected kinematic information about the vehicle itself ('137 patent at 2:13-20) and conveying the kinematic state information associated with the vehicle and proximal objects to multiple other vehicles ('137 patent at 2:26-34).

54.     The claimed inventions of the asserted patents resolve technical problems related to sensor systems, interactive location tracking and communication technologies.  For example, the asserted '137 patent describes systems that allow remotely located parties to interact and communicate in a computerized environment in real time (or near real-time) with one or more users, which, on information and belief, is exclusively implemented using computer technology. Similarly, the sensor systems in the asserted '650 patent describes systems that allow processors to correlate sensor data to determine reference frames and alignments in a vehicle which, also on information and belief, is exclusively implemented using computer technology.

55.     The claims of the patents in suit do not merely recite the performance of some method known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of both of the asserted patents recite inventive concepts that are rooted in computerized location tracking system technology, and overcome problems specifically arising in the realm of computerized sensor system and location tracking system technologies.

56.     The technologies claimed in the asserted patents do not preempt all ways of using location tracking system technology or sensor system technology, nor preempt the use of any well-known location tracking technology or sensor system technology, nor preempt any other well-known or prior art technology.

57.     The asserted patent claims are not directed to any "method of organizing human activity," "fundamental economic practice long prevalent in our system of commerce," nor "a building block of the modern economy."

58.     The patents in suit do not take a well-known or established business method or process and apply it to a general-purpose computer.  Instead, the specific systems and processes

described in the asserted patents have no direct corollary to a process that predates the advent of the Internet.

59.     The asserted patent claims in both patents in suit are directed toward solutions rooted in computer technology and directed to technologies, unique to computers and sensor technology systems, to overcome problems specifically arising in the realm of computerized location tracking and sensor system technologies.

60.     The asserted patent claims are not directed at a mere mathematical relationship or formula.

61.     The asserted patent claims cannot be performed by a human, in the human mind, or by pen and paper.

62.     Accordingly, each claim of the patents in suit recites a combination of elements sufficient to ensure that each claim, in practice, amounts to significantly more than a claim to an ineligible concept.

## **AUTOBRILLIANCE'S PATENT LITIGATION HISTORY**

63.     The '137 patent claims priority to U.S. Utility Patent Application No. 09/892,333, filed on June 26, 2001.

64.     The '137 patent previously has been subject to federal court litigation in *Eagle Harbor Holdings LLC, et al. v. Ford Motor Company*, (WDWA) 3:11-cv-05503 (terminated September 15, 2015).

65.     AutoBrilliance owns other, non-asserted related patents that share a patent specification with the '137 patent and claim priority to the same parent application, Serial No. 09/892,333.

66.      U.S. Patent No. 6,792,351, another of the AutoBrilliance patents, has been subject

to federal court litigation in *AutoBrilliance LLC v. Toyota Motor Corporation, et al.*, (TXED)

4:19-cv-00712 (terminated March 4, 2020).  This other Autobrilliance patent (the '351 patent) is

the subject of *Inter Partes Review* (IPR) petition in *Unified Patents, LLC f/k/a Unified Patents*

*Inc. v. AutoBrilliance, LLC* (PTAB) IPR2020-00354 (final written decision dated July 6, 2021,

determining all challenged claims unpatentable).

## PRE-SUIT COMMUNICATIONS BETWEEN THE PARTIES

67.      On July 23, 2019, prior to filing the instant suit, AutoBrilliance sent a letter to

Defendant GMC apprising it of the '137 patent and the '137 patent's relevance to the product

lines which it sells and distributes.  Both GMC and GMLLC, as a direct subsidiary of GMC, had

actual knowledge of the asserted '137 patent at least as of July 23, 2019.  And yet, even with full

knowledge of Plaintiff's patent rights, GMC and GMLLC (a direct subsidiary of GMC) have

continued to commit acts of infringement and have failed to cease their infringing activities.

## COUNT I – INFRINGEMENT OF THE '137 PATENT

68.      Paragraphs 1 through 67 are incorporated by reference as if fully set forth herein.

69.      GMC and GMLLC have directly infringed under 35 U.S.C. § 271(a) at least one

or more claims of the '137 patent either literally and/or under the doctrine of equivalents, by,

among other things, making, using, importing, selling, offering for sale and/or providing and/or

causing to be used in the United States the Accused Instrumentalities, including an inter-vehicle

communication system, based for example, on GM's Vehicle to Vehicle (V2V) technology (see

https://www.acarplace.com/brands/gm/vehicle-to-vehicle.html, last accessed and downloaded

August 19, 2021).  An exemplary claim chart detailing the correspondence of every element of

claims 1-7, 13-21, 25 & 27 of the '137 patent with features of the Accused Instrumentalities is

attached hereto as Exhibit A-1 and incorporated by reference.

70.     Third parties, including GM's customers, have directly infringed, and continue to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '137 patent, either literally and/or under the doctrine of equivalents, by at least using, importing, selling, and/or offering for sale the Accused Instrumentalities in the United States so as to infringe one or more claims of the '137 patent.

71.     GMC and GMLLC (a direct subsidiary of GMC) were made aware of the '137 patent and its infringement through at least the pre-suit communication of July 23, 2019 referenced above and/or the filing and service or notice of filing of this Complaint.

72.     Upon information and belief, since at least the time GMC and GMLLC received notice, Defendants have induced infringement under 35 U.S.C. § 271(b).  GMC and GMLLC have actively, knowingly, and intentionally induced, and with specific intent or conscious blindness, actively aided and abetted others to infringe, including but not limited to each of GM's partners, clients, customers, and end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least one claim of the '137 patent.

73.     General Motors induced infringement by selling or otherwise supplying and supporting the Accused Instrumentalities in the United States with the knowledge and intent that third parties would  use, sell, and/or offer for sale in the United States the Accused Instrumentalities,  for their intended purpose to infringe the '137 patent, with instructions as to the use of that product and guidance as to the specific steps that must be taken to utilize that product,  such as through an inter-vehicle communication system, based for example, on GM's Vehicle to Vehicle (V2V) technology (the "Accused Instrumentalities") (see https://www.acarplace.com/brands/gm/vehicle-to-vehicle.html, last accessed and downloaded August 19, 2021).  *See also* Exhibit A-1. (Claim chart detailing the correspondence of every

element of claims 1-7, 13-21, 25 & 27 of the '137 patent with features of GM's Accused Instrumentalities attached hereto.)

74.     In particular, GM's actions that aided and abetted others to infringe include advertising and/or providing support services to partners contracted by GM or providing instruction materials, training, and services regarding the Accused Instrumentalities which actively induced a user of GM's Vehicle to Vehicle (V2V) technology to infringe the asserted claims.  For example, GM provided potential users with detailed instruction materials on how to operate GM's V2V technology software (*see* Cadillac User's Guide referencing use of V2V technology at https://my.cadillac.com/content/dam/gmownercenter/gmna/dynamic/ manuals/2018/Cadillac/CTS/2018-cadillac-cts-owners-manual.pdf, last accessed and downloaded August 19, 2021) in a way that infringes at least one claim of the '137 patent.

75.     Upon information and belief, since at least the time GMC and GMLLC received notice of the '137 patent on or about July 23, 2019 as noted above, GM has contributed to the infringement by third parties, including their customers, of one or more claims of the '137 patent, including at least claims 1-7, 13-21, 25 & 27, under 35 U.S.C. § 271(c), by, for example, selling and/or offering for sale products and services in the United States, including GM's V2V technology software (*see* https://my.cadillac.com/content/dam/gmownercenter/gmna/ dynamic/manuals/2018/Cadillac/CTS/2018-cadillac-cts-owners-manual.pdf, last accessed and downloaded August 19, 2021) knowing that those products constitute a material part of the inventions of the '137 patent, knowing that those products are especially made or adapted to infringe the '137 patent, and knowing that those products are not staple articles of commerce suitable for substantial non-infringing use.

76.     AutoBrilliance has been damaged by GM's infringement of the '137 patent.

77.     From the time of notice on or about July 23, 2019, GMC and GMLLC have willfully infringed the '137 patent.

78.     The conduct by GMC and GMLLC in infringing the '137 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

79.     AutoBrilliance reserves the right to modify its infringement theories as discovery progresses in this case and is not to be estopped for purposes of its infringement contentions or any claim construction, express or implied, set forth within the attached claim chart. AutoBrilliance intends the claim chart for the '137 patent (Exhibit A-1) only to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart does not represent AutoBrilliance' s preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT II – INFRINGEMENT OF THE '650 PATENT

80.     Paragraphs 1 through 79 are incorporated by reference as if fully set forth herein.

81.     GMC and GMLLC directly infringe and continue to directly infringe under 35 U.S.C. § 271(a) at least one claim of the '650 patent either literally and/or under the doctrine of equivalents, by, among other things, making, using, importing, selling, offering for sale and/or providing and/or causing to be used in the United States the Accused Instrumentalities, including GM's Cadillac "Super Cruise" cruise control technology, an aspect of the "Accused Instrumentalities" (see https://www.cadillac.com/ownership/vehicle-technology/super-cruise, last accessed and downloaded August 19, 2021) and GM's Autonomous Vehicle technology, another aspect of the "Accused Instrumentalities" (see https://www.motortrend.com/news/meet-cruise-av-gms-first-production-ready-driverless-car, last accessed and downloaded August 19, 2021). An exemplary claim chart detailing the correspondence of every element of claim 31 of the '650

patent with features of GM's Accused Instrumentalities is attached hereto as Exhibit B-1 and incorporated by reference.

82.     Third parties, including GM's customers, have directly infringed, and continue to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '650 patent, either literally and/or under the doctrine of equivalents, by at least using, importing, selling, and/or offering for sale the Accused Instrumentalities in the United States so as to infringe one or more claims of the '650 patent.

83.     Upon information and belief, since at least the time GMC and GMLLC received notice through the filing and service of this Complaint, GM has contributed to, and continues to contribute to, the infringement by third parties, including their customers, of one or more claims of the '650 patent, including at least claim 31 of the '650 patent under 35 U.S.C. § 271(c), by, for example, selling and/or offering for sale products and services in the United States including GM's Cadillac "Super Cruise" cruise control technology and GM's Autonomous Vehicle technology knowing that those products constitute a material part of the inventions of the '650 patent, knowing that those products are especially made or adapted to infringe the '650 patent, and knowing that those products are not staple articles of commerce suitable for substantial non-infringing use.

84.     AutoBrilliance has been and continues to be damaged by GM's infringement of the '650 patent.

85.     AutoBrilliance reserves the right to modify its infringement theories as discovery progresses in this case and is not to be estopped for purposes of its infringement contentions or any claim construction, express or implied, set forth within the attached claim chart. AutoBrilliance intends the claim chart for the '650 patent (Exhibit B-1) only to satisfy the notice

requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart does not represent AutoBrilliance's preliminary or final infringement contentions or preliminary or final claim construction positions.

## JURY DEMAND

86.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, AutoBrilliance demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, AutoBrilliance demands judgment for itself and against General Motors as follows:

A.      An adjudication that General Motors has infringed the AutoBrilliance patents in suit;

B.      An award of damages to be paid by General Motors adequate to compensate AutoBrilliance for GM's past infringement of the Autobrilliance patents in suit, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.      A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of AutoBrilliance's reasonable attorneys' fees; and

D.      An award to AutoBrilliance of such further relief at law or in equity as the Court deems just and proper.

Dated: August 19, 2021                    Respectfully submitted,


                                          DEVLIN LAW FIRM LLC


                                          */s/ Timothy Devlin*
                                          Timothy Devlin (Del. Bar No. 4241)
                                          tdevlin@devlinlawfirm.com
                                          Patrick R. Delaney (DC Bar No. 472266)
                                          pdelaney@devlinlawfirm.com
                                           1526 Gilpin Ave.
                                          Wilmington, Delaware 19806
                                          Telephone: (302) 449-9010
                                          Facsimile: (302) 353-4251


                                          *Attorneys for Plaintiff,*
                                          *AutoBrilliance LLC*